UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                          )
BOSTON PROPERTY EXCHANGE TRANSFER  )
COMPANY, INC. f/k/a BENISTAR PROPERTY  )
EXCHANGE TRUST COMPANY, INC.,       )
                                                          )
       Plaintiff,                                  )
                                                          )
   v.                                              )   Civil Action No. 08-12069-NMG
                                                          )
JOSEPH IANTOSCA, Individually and as Trustee  )
of the Faxon Heights Apartments Realty Trust and  )
Fern Realty Trust, BELRIDGE CORPORATION,   )
GAIL A. CAHALY, JEFFREY M. JOHNSTON,    )
BELLEMORE ASSOCIATES, LLC,              )
MASSACHUSETTS LUMBER COMPANY, INC.,)
ZELLE MCDONOUGH & COHEN LLP,           )
ANTHONY R. ZELLE, P.C., and NYSTROM      )
BECKMAN & PARIS LLP,                         )
                                                          )
       Defendants.                                )
_____)

**AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 15(a)(1)(A), plaintiff Boston Property Exchange Transfer Company, Inc. f/k/a Benistar Property Exchange Trust Company, Inc. ("BPETCO"), as and for its Amended Complaint, avers as follows:

**Parties**

1.    Plaintiff BPETCO is a Delaware corporation with a principal place of business in Connecticut.  Thus, BPETCO is a citizen of Delaware and Connecticut.

2.    Defendant Joseph Iantosca ("Iantosca") is a natural person and a citizen of Massachusetts.

1

3.     Defendant Belridge Corporation ("Belridge") is a Massachusetts corporation with a principal place of business in Massachusetts.  Thus, Belridge is a citizen of Massachusetts.

4.     Defendant Gail A. Cahaly ("Cahaly") is a natural person and a citizen of Massachusetts.

5.     Defendant Jeffrey M. Johnston ("Johnston") is a natural person and a citizen of Massachusetts.

6.     Defendant Bellemore Associates, LLC ("Bellemore") is a New Hampshire limited liability company and all of its members are citizens of New Hampshire.  Thus, Bellemore is a citizen of New Hampshire.

7.     Defendant Massachusetts Lumber Company, Inc. ("Mass Lumber") is a Massachusetts corporation with its principal place of business in Massachusetts.  Thus, Mass Lumber is a citizen of Massachusetts.  (Iantosca, Belridge, Cahaly, Johnston, Bellemore, and Mass Lumber are collectively referred to as the "Non-Attorney Defendants.")

8.     Defendant Zelle McDonough & Cohen, LLP (the "Zelle Firm"), is a Massachusetts limited liability partnership and all of its partners are citizens of Massachusetts.  Thus, the Zelle Firm is a citizen of Massachusetts.

9.     Defendant Anthony R. Zelle, P.C. ("Zelle"), is a Massachusetts professional corporation with a principal place of business in Massachusetts.  Thus, Zelle is a citizen of Massachusetts.

10. Defendant Nystrom Beckman & Paris LLP ("NBP"), is a Massachusetts limited liability partnership and all of its partners are citizens of Massachusetts. Thus, NBP is a citizen of Massachusetts. (The Zelle Firm, Zelle and NBP are collectively referred to as the "Attorney Defendants." The Attorney Defendants and the Non-Attorney Defendants are collectively referred to as the "Defendants.")

## Jurisdiction and Venue

11. This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. § 1332(a)(1) because the Complaint is between citizens of different States (Delaware and Connecticut vs. Massachusetts and New Hampshire), the amount in controversy (exclusive of interest, costs and attorneys' fees) exceeds the sum of $75,000, and there is complete diversity between BPETCO (Delaware and Connecticut) and the Defendants (Massachusetts and New Hampshire).

12. Venue regarding this Complaint is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2), § 1391(a)(3), and § 1391(c), because the Defendants are all subject to personal jurisdiction in Massachusetts and a substantial part of the events or omissions giving rise to these claims occurred in Massachusetts.

## Facts

13. The Non-Attorney Defendants previously filed an action against BPETCO and others in Massachusetts state court styled, *Cahaly v. Benistar Property Exchange Trust Co., Inc.*, No. 01-0116-BLS, Suffolk Superior Court (filed Jan. 2001) ("*Cahaly*").

14. Subsequent to the initiation of the *Cahaly* action, BPETCO commenced an NASD arbitration proceeding against UBS PaineWebber, Inc. ("PaineWebber") for having caused the losses at the center of the dispute in *Cahaly*.

15. BPETCO's statement of claim sought compensatory and punitive damages against PaineWebber in the amount of approximately $88 million.

16. Despite the fact that the *Cahaly* appeals process had not yet been completed, the Defendants sought to attach and succeeded ultimately in "hijacking" BPETCO's property, its arbitration claim against PaineWebber, despite Massachusetts statutes prohibiting any type of collection action on a judgment prior to the exhaustion of all appeals. Over BPETCO's objection, the *Cahaly* court assigned BPETCO's arbitration claim against PaineWebber to the Non-Attorney Defendants, for prosecution only, with any proceeds to be held in escrow for BPETCO's benefit.

17. Although prosecution of the arbitration claim was assigned to the Non-Attorney Defendants, any award was to be held in escrow for the benefit of BPETCO because the claim belonged to BPETCO. Furthermore, at the time of the assignment, there was no final or enforceable judgment against BPETCO in *Cahaly*.

18. The Non-Attorney Defendants were represented in *Cahaly* and in the NASD arbitration by the Attorney Defendants. Effectively, the Attorney Defendants had "hijacked" BPETCO's claim against PaineWebber and became the *de facto* attorneys for BPETCO in the PaineWebber arbitration.

19. After appearing in the NASD arbitration, the Attorney Defendants filed an amended statement of claim *on behalf of BPETCO*, without BPETCO's approval, thereby substituting their theory of the case and causes of action for BPETCO's original theory of the case and causes of action.

20. In their amended statement of claim, the Attorney Defendants sought (in BPETCO's name) an indeterminate amount of punitive damages against PaineWebber in addition to $8.6 million in compensatory damages, plus attorneys' fees, interest and costs, which effectively undercut and contradicted BPETCO's original claims against PaineWebber.

21. It was possible that the NASD arbitration panel could have actually awarded BPETCO $88 million in damages, whether pursuant to BPETCO's initial statement of claim or the amended statement of claim filed by the Attorney Defendants.

22. As a result, it was factually and legally impossible for BPETCO to have known or discovered whether it had suffered any actual loss or appreciable harm by virtue of the Defendants' wrongful acts until the NASD arbitration panel rendered its award on December 15, 2005—because until the award was issued, it was possible for the arbitrators to have rendered an award for the full $88 million in damages initially sought by BPETCO.

23. Nor did the assignment order make some harm to BPETCO inevitable, as the Defendants could just as easily have pursued the arbitration by prosecuting BPETCO's initial statement of claim rather than Defendants' amended statement of claim.

24. Because the assignment order clearly stated that "[a]ny damages that may be awarded to [BPETCO] against PaineWebber are to be held in escrow by the [Non-Attorney Defendants] (through [the Attorney Defendants])," it was reasonably foreseeable that BPETCO would rely on the Non-Attorney Defendants and the Attorney Defendants (as BPETCO's attorneys-in-fact) to represent BPETCO's interests in the arbitration with vigor and in the bests interests of BPETCO.

5

25.     The legal services performed by the Attorney Defendants in the arbitration were intended to benefit their clients (i.e., the Non-Attorney Defendants) as well as BPETCO.  Nonetheless, the Attorney Defendants and the Non-Attorney Defendants knowingly participated in a plan of action that included intentionally withholding critical information from BPETCO that was detrimental to BPETCO's interests.  Contrary to the *Cahaly* court's order, the Defendants also failed to forward promptly all communications and pleadings regarding the arbitration and related proceedings.

26.     The Attorney Defendants had actual knowledge of BPETCO's reasonable reliance on their legal representation of BPETCO in the arbitration by virtue of written and oral communications between the Attorney Defendants and counsel for BPETCO which touched upon the causes of action alleged in the statement of claim, the strategy employed to pursue the arbitration, the witnesses to be called, the theories to be pursued, and the provision of general legal advice with respect to the overall arbitration strategy.

27.     Through written and oral communications, BPETCO sought and obtained legal advice from the Attorney Defendants on numerous occasions with respect to the strategy to be utilized in the NASD arbitration.

28.     By virtue of the Defendants "hijacking" the prosecution of BPETCO's arbitration claim against PaineWebber, it was reasonably foreseeable that BPETCO would necessarily come to rely on the legal services performed by the Attorney Defendants and the due care exercised by the Non-Attorney Defendants in prosecuting the arbitration claim for BPETCO's benefit.

29.     On December 15, 2005, the NASD arbitration panel awarded BPETCO only $12.6 million against PaineWebber, which was substantially less than the $88 million in damages initially sought by BPETCO.

30.     The much lower arbitration award was directly and proximately caused by the wrongful acts of the Defendants in their prosecution of BPETCO's arbitration claim against PaineWebber.

31.     By virtue of the Defendants' wrongful acts, BPETCO has suffered actual damages in the amount of at least $75.4 million.

32.     By virtue of the assignment order, the Defendants became co-trustees of a trust *res* (i.e., BPETCO's arbitration claim against PaineWebber) for the benefit of the trust beneficiary (i.e., BPETCO). The Attorney Defendants had a duty to represent BPETCO's interests as vigorously as the interests of their own clients (i.e., the Non-Attorney Defendants).

33.     BPETCO and the Defendants are engaged in the conduct of trade, commerce, and business. The Defendants' business has been to litigate against BPETCO for almost a decade.

### COUNT I
### (Negligence Against Attorney Defendants)

34.     BPETCO realleges the averments contained in the foregoing paragraphs as though set forth fully herein.

35.     The Attorney Defendants owed BPETCO at least the duty of reasonable care to exercise the degree of care and skill of average qualified legal practitioners not to act in an imprudent manner that would result in the diminution of BPETCO's recovery against

PaineWebber. However, inasmuch as the Attorney Defendants represented themselves to BPETCO and the public as specially qualified in the area of commercial litigation, the Attorney Defendants owed BPETCO a heightened duty of care in their actions to prosecute BPETCO's arbitration claim.

36. The Attorney Defendants violated their duty of care to BPETCO.

37. By amending BPETCO's statement of claim and receiving only a $12.6 million arbitration award instead of the $88 million award originally and reasonably sought by BPETCO, the Attorney Defendants failed to conform their conduct to the reasonable standard of care described above.

38. As a result of their breach of the duty of care, the Attorney Defendants proximately caused BPETCO to suffer losses in the amount of $75.4 million.

39. The Attorney Defendants are jointly and severally liable to BPETCO for compensatory damages in the amount of $75.4 million.

## COUNT II
### (Breach of the Duty of Care Against Attorney Defendants)

40. BPETCO realleges the averments contained in the foregoing paragraphs as though set forth fully herein.

41. An implied attorney-client relationship existed between the Attorney Defendants and BPETCO.

42. The Attorney Defendants owed BPETCO at least the duty of reasonable care to exercise the degree of care and skill of average qualified legal practitioners not to act in an imprudent manner that would result in the diminution of BPETCO's recovery against PaineWebber. However, inasmuch as the Attorney Defendants represented themselves to

8

BPETCO and the public as specially qualified in the area of commercial litigation, the Attorney Defendants owed BPETCO a heightened duty of care in their actions to prosecute BPETCO's arbitration claim.

43. The Attorney Defendants violated their duty of care to BPETCO.

44. By amending BPETCO's statement of claim and receiving only a $12.6 million arbitration award instead of the $88 million award originally and reasonably sought by BPETCO, the Attorney Defendants failed to conform their conduct to the reasonable standard of care described above.

45. As a result of their breach of the duty of care, the Attorney Defendants proximately caused BPETCO to suffer losses in the amount of $75.4 million.

46. The Attorney Defendants are jointly and severally liable to BPETCO for compensatory damages in the amount of $75.4 million.

## COUNT III
### (Breach of Fiduciary Duty Against Attorney Defendants)

47. BPETCO realleges the averments contained in the foregoing paragraphs as though set forth fully herein.

48. The Attorney Defendants owed BPETCO a fiduciary duty whereby BPETCO placed trust and confidence in them to represent BPETCO's interests in the arbitration against PaineWebber.

49. The Attorney Defendants violated their fiduciary duty to BPETCO by, *inter alia*, (i) undertaking to act on BPETCO's behalf in the arbitration when such undertaking was riddled with conflicts of interest; (ii) taking actions and refraining from taking actions when it was in the best interests of the Defendants but not BPETCO; (iii) knowingly

participating in a plan of action that included intentionally withholding critical information from BPETCO; (iv) failing to use their best judgment in prosecuting the arbitration claim on behalf of BPETCO; and (v) amending BPETCO's statement of claim and receiving only a $12.6 million arbitration award instead of the $88 million award originally and reasonably sought by BPETCO.

50. As a result of their breach of fiduciary duty, the Attorney Defendants proximately caused BPETCO to suffer losses in the amount of $75.4 million.

51. The Attorney Defendants are jointly and severally liable to BPETCO for compensatory damages in the amount of $75.4 million.

## COUNT IV
### (Negligence Against Non-Attorney Defendants)

52. BPETCO realleges the averments contained in the foregoing paragraphs as though set forth fully herein.

53. The Non-Attorney Defendants owed BPETCO at least the duty of reasonable care to exercise the degree of care and skill of average reasonable persons not to act in an imprudent manner that would result in the diminution of BPETCO's recovery against PaineWebber.

54. The Non-Attorney Defendants violated their duty of care to BPETCO.

55. By amending BPETCO's statement of claim and receiving only a $12.6 million arbitration award instead of the $88 million award originally and reasonably sought by BPETCO, the Non-Attorney Defendants failed to conform their conduct to the reasonable standard of care described above.

56. As a result of their breach of the duty of care, the Non-Attorney Defendants proximately caused BPETCO to suffer losses in the amount of $75.4 million.

57. The Non-Attorney Defendants are jointly and severally liable to BPETCO for compensatory damages in the amount of $75.4 million.

## COUNT V
### (Breach of Fiduciary Duty Against Non-Attorney Defendants)

58. BPETCO realleges the averments contained in the foregoing paragraphs as though set forth fully herein.

59. The Non-Attorney Defendants owed BPETCO a fiduciary duty whereby BPETCO placed trust and confidence in them to represent BPETCO's interests in the arbitration against PaineWebber.

60. The Non-Attorney Defendants violated their fiduciary duty to BPETCO by, *inter alia*, (i) undertaking to act on BPETCO's behalf in the arbitration when such undertaking was riddled with conflicts of interest; (ii) taking actions and refraining from taking actions when it was in their best interests but not those of BPETCO; (iii) knowingly participating in a plan of action that included intentionally withholding critical information from BPETCO; (iv) failing to use their best judgment in prosecuting the arbitration claim on behalf of BPETCO; and (v) amending BPETCO's statement of claim and receiving only a $12.6 million arbitration award instead of the $88 million award originally and reasonably sought by BPETCO.

61. As a result of their breach of fiduciary duty, the Non-Attorney Defendants proximately caused BPETCO to suffer losses in the amount of $75.4 million.

62.     The Non-Attorney Defendants are jointly and severally liable to BPE for compensatory damages in the amount of $75.4 million.

## COUNT VI
### (Breach of Express and/or Implied Contract Against Non-Attorney Defendants)

63.     BPETCO realleges the averments contained in the foregoing paragraphs as though set forth fully herein.

64.     The Non-Attorney Defendants entered into an express and/or implied contractual relationship with BPETCO whereby they agreed to take all necessary steps to obtain the full amount of BPETCO's $88 million claim, to use utmost good faith and due care in protecting BPETCO's interests, and to forward promptly all communications and pleadings regarding the arbitration and related proceedings.

65.     The Non-Attorney Defendants violated their express and/or implied contractual obligations with BPETCO by failing to take the actions described in the immediately preceding paragraph.

66.     By amending BPETCO's statement of claim and receiving only a $12.6 million arbitration award instead of the $88 million award originally and reasonably sought by BPETCO, the Non-Attorney Defendants failed to comply with their express and/or implied contractual duties.

67.     As a result of the breach of express and/or implied contract by the Non-Attorney Defendants, they proximately caused BPETCO to suffer losses in the amount of $75.4 million.

68.     The Non-Attorney Defendants are jointly and severally liable to BPETCO for compensatory damages in the amount of $75.4 million.

## COUNT VII
### (Mass. Gen. Laws c. 93A Against All Defendants)

69. BPETCO realleges the averments contained in the foregoing paragraphs as though set forth fully herein.

70. The above-described actions and omissions of all Defendants were the proximate cause of BPETCO's damages and constituted willful and knowing unfair and deceptive acts and practices in violation of Mass. Gen. Laws c. 93A, § 11.

71. The above-described actions occurred primarily and substantially in Massachusetts.

72. Defendants' conduct was willful and knowing.

73. As a result of the willful and knowing unfair and deceptive conduct of Defendants, BPETCO has been damaged in the amount of $75.4 million.

74. Defendants are liable to BPETCO for compensatory damages in the amount of $75.4 million plus punitive treble damages in the amount of $226.2 million, attorneys' fees and costs.

## COUNT VIII
### (CUTPA Against All Defendants)

75. BPETCO realleges the averments contained in the foregoing paragraphs as though set forth fully herein.

76. By engaging in unfair and deceptive acts and practices in Connecticut or having a substantial effect on BPETCO in Connecticut, Defendants have willfully and knowingly engaged in unfair and deceptive conduct in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b(a) ("CUTPA"). This conduct

encompasses both their intentional mishandling of the NASD arbitration to BPETCO's detriment and the conduct of their trade or business in general.

77. Defendants' conduct constitutes immoral, unethical, oppressive and/or unscrupulous conduct and/or practices that violate CUTPA.

78. As a result of the foregoing, BPETCO has sustained damages in the amount of $75.4 million.

79. Defendants are liable to BPETCO for compensatory damages in the amount of $75.4 million plus punitive treble damages in the amount of $226.2 million, attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, BPETCO demands judgment against all Defendants, jointly and severally, for compensatory damages of $75.4 million, punitive damages of $226.2 million, attorneys' fees and costs; including all other relief the Court may deem appropriate.

**BPETCO DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

**BOSTON PROPERTY EXCHANGE TRANSFER COMPANY, INC. f/k/a BENISTAR PROPERTY EXCHANGE TRUST COMPANY, INC.,**

By its attorneys,

*/s/ Jack E. Robinson*
Jack E. Robinson (BBO #559683)
2187 Atlantic Street
Stamford, CT 06902
(203) 425-4500
(203) 425-4555 (fax)
robinsonesq@aol.com

Dated: September 18, 2009

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the date hereof this document was filed through the Court's CM/ECF system and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF).

                        */s/ Jack E. Robinson*
                        Jack E. Robinson