United States District Court
District of Massachusetts

```
_____
                              )
BOSTON PROPERTY EXCHANGE      )
TRANSFER COMPANY f/k/a BENISTAR)
PROPERTY EXCHANGE TRUST COMPANY,)
INC.,                         )   Civil Action No.
        Plaintiff,            )   08-12069-NMG
                              )
        v.                    )
                              )
JOSEPH IANTOSCA, Individually )
and as Trustee of the Faxon   )
Heights Apartments Realty Trust)
and Fern Realty Trust, BELRIDGE)
CORPORATION, GAIL A. CAHALY,  )
JEFFREY M. JOHNSTON, BELLEMORE)
ASSOCIATES, LLC, MASSACHUSETTS)
LUMBER COMPANY, INC.,         )
        Defendants.           )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Boston Property Exchange Transfer Co. f/k/a Benistar Property Exchange Trust Co. ("BPE") brought suit against defendants Joseph Iantosca, Belridge Corp., Gail A. Cahaly, Jeffrey M. Johnston, Bellemore Associates, LLC and Massachusetts Lumber Co. (collectively "the non-attorney defendants") and defendants Zelle McDonough & Cohen, LLP, Anthony R. Zelle, P.C. and Nystrom Beckman & Paris, LLP (collectively "the attorney defendants") for negligence, malpractice, breach of fiduciary duty, breach of contract, violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A ("Chapter 93A") and

-1-

violation of the Connecticut Unfair Trade Practices Act ("CUTPA").

On February 18, 2010, this Court allowed, in part, and denied, in part, defendants' motion to dismiss. Boston Prop. Exch. Transfer Co. v. Iantosca, 686 F. Supp. 2d 138, 147 (D. Mass. 2010). The Court dismissed all claims against the attorney defendants but dismissed only the claim arising under CUTPA against the non-attorney defendants. Currently before the Court are the parties' motions for summary judgment with respect to the remaining claims against the non-attorney defendants.

## I. Background

This case arises out of the aftermath of a prior state court action and the facts are generally not disputed. The non-attorney defendants previously brought suit against BPE for securities fraud in Massachusetts state court ("the Cahaly action") in which they were represented by the attorney defendants. While that case was pending, BPE commenced a NASD arbitration against UBS PaineWebber ("the PaineWebber arbitration") for having caused the losses at issue in the Cahaly action. BPE's original statement of claim in the PaineWebber arbitration alleged damages of $88 million.

In the Cahaly action, the non-attorney defendants obtained a judgment against BPE for over $20 million. As a part of the collection effort, on November 3, 2004, the state court entered

-2-

an order ("the state court order") assigning the right to prosecute BPE's claims in the PaineWebber arbitration to the non-attorney defendants. They were represented by the attorney defendants.

In that capacity, in July, 2005, the attorney defendants sought leave from the arbitration panel to file an amended statement of claims. They sought to change the legal theory on which the claim was brought and, rather than demanding $88 million, alleged a more modest $8.6 million in compensatory damages as well as attorneys' fees, interest and costs. The amendment setting forth a new theory of liability and the accompanying reduction in damages was allowed over BPE's objection.

In December, 2005, defendants succeeded on the new theory and the arbitration panel entered an award of $12.6 million (primarily consisting of compensatory damages and interest) against PaineWebber. Plaintiff's complaint in this action stems from its displeasure with that award which is substantially less than the $88 million sought by the plaintiff when it controlled the prosecution of PaineWebber arbitration. It claims that the lower award was directly and proximately caused by the wrongful acts of defendants in their prosecution of BPE's claims and that, as a result, defendants are liable to BPE for the difference in those damages amounts.

**II. Procedural History**

BPE filed its complaint in this action on December 12, 2008. The attorney defendants and the non-attorney defendants both filed motions to dismiss the original complaint on July 16 and July 29, 2009, respectively. Instead of opposing those motions, BPE filed an amended complaint on September 18, 2009, whereupon the attorney and non-attorney defendants filed renewed motions to dismiss the amended complaint incorporating and updating arguments from their initial motions to dismiss. After receiving an extension of time, BPE filed an opposition to both motions.

On February 18, 2010, the Court allowed, in part, and denied, in part, the defendants' motions to dismiss. Following extensive discovery, plaintiff moved in May, 2011 for partial summary judgment on the issue of liability. Shortly thereafter, the non-attorney defendants moved for summary judgment on all the remaining claims. Both motions are opposed.

**III. Analysis**

   **A. Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. No material fact remains in dispute where a nonmoving party fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). A genuine issue of material fact exists only where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp., 477 U.S. at 324. The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is

appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**B. Application**

    **1. Breach of Contract (Count IV)**

"The essential elements of a contract are an offer, acceptance and an exchange of consideration or a meeting of the minds." Foley v. Yacht Mgmt. Grp., Inc., No. 09-cv-11280, 2011 WL 4020835, at *4 (D. Mass. Sept. 9, 2011) (Casper, J.). Absent a written or verbal agreement, a contract may be implied.

> There are two kinds of implied contracts, one implied in fact and the other implied in law: the first does not exist unless the parties manifest assent, by reason of words or conduct, while the second is quasi or constructive, and does not require mutual assent but is imposed by a fiction of the law, to enable justice to be accomplished, even when no contract was intended by the parties.

Williston on Contracts § 1:6 (4th ed. 2010); see also United States v. Stella Perez, 956 F. Supp. 1046, 1050-51 (D.P.R. 1997). Quasi-contracts are typically restitutionary in nature and intended "to award the plaintiff the reasonable value of any benefit conferred upon the defendant." Williston on Contracts § 1:6; Mass Cash Register, Inc. v. Comtrex Systs. Corp., 901 F. Supp. 404, 424 (D. Mass. 1995) ("No implied contract will be found in the absence of a benefit conferred.").

    Plaintiff contends that the state court order assigning

-6-

BPE's legal claims against PaineWebber to the defendants created either an express or implied contract between the parties whereby the defendants were obligated to protect BPE's interests and obtain the full amount of its $88 million claim.

A court order is not, however, a contract. The state court order resolved a heated legal dispute between the parties by divesting plaintiff of its property right in favor of the defendants. There simply was no mutual assent or voluntary conferral of a benefit. Accordingly, the Court will allow the defendants' motion for summary judgment, and deny plaintiff's motion, with respect to the plaintiff's claim for breach of contract.

### 2. Negligence and Breach of Fiduciary Duty (Counts V and VI)

To prevail on a claim for negligence or breach of fiduciary duty under Massachusetts law, a plaintiff must prove, by a preponderance of the evidence, that the defendant owed it a duty. See Heinrich v. Sweet, 308 F.3d 48, 62-63 (1st Cir. 2002) (negligence requires "a legal duty owed by defendant to plaintiff"); Qestec, Inc. v. Krummenacker, 367 F. Supp. 2d 89, 97 (D. Mass. 2005) (breach of fiduciary duty requires "a fiduciary duty arising from a relationship between the parties"). Plaintiff here contends that, pursuant to the state court order, the non-attorney defendants owed plaintiff a duty to prosecute its arbitration claim as it existed at the time of the

assignment. Defendants counter that they owed plaintiff no such duty because the state court order expressly allowed them to supersede plaintiff's legal claim so long as they obtained permission from the arbitrators to do so.[1]

Under Massachusetts law, a defendant's right to recover damages against a third party is a property interest that may be reached and applied by a plaintiff. See Digney v. Blanchard, 229 Mass. 235, 239 (1918). Generally, the assignee of a cause of action, even where the assignment is involuntary, has the right to intervene in a suit and to "control the litigation and receive its fruits." Piper v. Childs, 290 Mass. 560, 564 (1935).

Justice Margot Botsford of the Massachusetts Superior Court did not limit that general right in her November 3, 2004 order. Rather, she assigned to the defendants all of BPE's legal claims against PaineWebber and gave defendants the right to control the prosecution of those claims. Both parties had submitted briefs which discussed the non-attorney defendants' intention to

---

[1] The order itself states:

> After hearing, and pursuant to [Mass. Gen. Laws Ch. 223, § 86A and ch. 214, § 3(6),] it is Ordered that [BPE's] legal claims against [PaineWebber] be assigned for prosecution to the plaintiffs in this action. Any action that the plaintiffs, as assignees, may take with respect to the pending NASD proceedings is a matter for the arbitrators to decide, not this court. Any damages that may be awarded to Benistar Property against PaineWebber are to be held in escrow by the plaintiffs (through their counsel) pending further order of this Court.

supersede plaintiff's legal claim against PaineWebber should the motion to compel assignment be allowed.  The non-attorney defendants explained that 1) the plaintiff's claims against PaineWebber arose from the customer-broker relationship,  2) PaineWebber was grossly negligent in determining the suitability of the trades and 3) the legal theory behind BPE's claim against PaineWebber was "meritless" and unworkable and would result in "wasting and loss of property."  In response, BPE argued that the non-attorney defendants, "under the guise of assignment," intended to "prosecute newly-fashioned claims against PaineWebber for breach of duty".

Thus, cognizant of the defendants' intention to replace BPE's original claim with a different one, Justice Botsford ordered that <u>any</u> action the defendants took in their capacity as assignees with respect to the NASD proceeding was a matter for the arbitrators to decide.[2]  The only express limitation on the prosecution of those claims was that any damages awarded were to be held in escrow.

The state court order thus fashioned broad equitable relief in favor of the non-attorney defendants.  It assigned to them any

---

[2] Plaintiff's contention that this language meant only that the court would not "micromanage" the arbitrators is without merit and fails to raise an issue of material fact.  Defendants have demonstrated that, in the context of the litigation, they were authorized to change plaintiff's legal theory and plaintiff has no credible rejoinder.

cause of action BPE may have had against PaineWebber and did not require prosecution of the claim as it stood when assigned. See Cahaly v. Benistar Prop. Exch. Trust Co., Inc., 68 Mass. App. Ct. 668, 678-79 (2007) (upholding order and stating that "[w]here equitable relief is appropriate, its scope is left to the discretion of the trial judge"). Rather, under the terms of the order, any proposed amendment of the claim would be a matter the defendants had to present to the arbitrator, not the state court.

Therefore, even if a court order were in fact capable of imposing a duty of care between opposing litigants, the non-attorney defendants here owed no duty to prosecute plaintiff's claim as it stood and cannot be held liable under either a negligence or breach of fiduciary duty theory. The Court accordingly will allow the defendants' motion for summary judgment, and deny plaintiff's motion, with respect to the plaintiff's claims for negligence and breach of fiduciary duty.

### 3. Chapter 93A (Count VII)

Chapter 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. To prove a Chapter 93A claim, "it is neither necessary nor sufficient that a particular act or practice violate common or statutory law." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 69 (1st Cir. 2009) (citations omitted). Although deception and unfairness are

factual inquiries, "the boundaries of what may qualify for consideration as a [Chapter] 93A violation is a question of law." Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 563 (2008) (citation omitted).

Plaintiff contends that the defendants' "unlawful replacement of [BPE's] valid legal claims against PaineWebber in favor of pursuing their own agenda" was unfair, deceptive, contrary to public policy and immoral. The Court has determined, however, that the non-attorney defendants' actions did not exceed the scope of the state court's order. Furthermore, the decision not to pursue plaintiff's claim as it stood at the time of assignment was not unfair or deceptive. The defendants forewarned of their intent to supersede plaintiff's legal theory with their own and obtained permission from the arbitration panel to do so. Their stated purpose for the substitution was to maximize their chance of recovery. Plaintiff seems to contend that the defendants' motivation was illicit but offers no facts or evidence to support that contention. Accordingly, the Court will allow the defendants' motion for summary judgment, and deny plaintiff's motion, with respect to the plaintiff's claim for violation of Chapter 93A.

**ORDER**

In accordance with the foregoing,

1) Plaintiff's Motion for Partial Summary Judgment (Docket No. 68) is **DENIED;** and

2) Defendants' Motion for Summary Judgment (Docket No. 70)is **ALLOWED.**

**So ordered.**

                                            /s/ Nathaniel M. Gorton
                                            Nathaniel M. Gorton
                                            United States District Judge

Dated November 15, 2011